## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS A. GORZELSKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:2006-07 |
| | ) | |
| JO ANNE B. BARNHART, | ) | JUDGE GIBSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

# Memorandum Opinion and Order of Court

**GIBSON, J.**

This matter comes before the Court on the parties' cross-motions for summary judgment and the briefs in support thereof (Document Nos. 10-11, 14-15). The Court has jurisdiction of this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Court will deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 10) and grant the Motion for Summary Judgment filed by the Commissioner of Social Security (Document No. 14).

Thomas A. Gorzelsky ("Plaintiff") protectively filed applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act on November 18, 2003, alleging disability since January 1, 2003, due to left knee problems, an attention deficit hyperactivity disorder, a depressive disorder and an anxiety disorder. R. p. 12. The claims were initially denied on July 27, 2004, prompting the Plaintiff to file a timely request for a hearing on September 2, 2004. *Id.* A hearing was held in Johnstown, Pennsylvania, on July 11, 2005, before

1

Administrative Law Judge John J. Mulrooney II ("ALJ"). R. p. 227. The Plaintiff, who was represented by counsel, appeared and testified at the hearing. R. pp. 229-251. Joseph Bentivegna, an impartial vocational expert, was present for the entire hearing and testified before its conclusion. R. pp. 251-255.

On August 26, 2005, the ALJ issued a decision which was unfavorable to the Plaintiff. R. p. 24. The Appeals Council denied the Plaintiff's request for review on November 10, 2005, thereby making the ALJ's decision the final decision of the Commissioner of Social Security in this case. R. p. 5. The Plaintiff filed a complaint in this matter on January 12, 2006. Document No. 3. Jo Anne Barnhart, Commissioner of Social Security ("Commissioner"), filed an answer on March 16, 2006. Document No. 7. The Plaintiff and the Commissioner filed cross-motions for summary judgment on April 17, 2006, and June 1, 2006, respectively. Document Nos. 10 & 14.

A District Court's review of the administrative determinations of the Commissioner of Social Security is governed by the standard of whether the record contains substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 853 (1971). Substantial evidence is more than just a scintilla of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted); *see also, Stewart v. Secretary*, 714 F.2d 287 (3d Cir. 1983). In discussing this standard of review, the Third Circuit has stated:

> This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g., that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion. See

2

*id.* at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). *De novo* review of the facts is prohibited and

deference must be given to the Commissioner's findings unless there is an absence of substantial

evidence to support such findings in the record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185,

1190-1191 (3d Cir. 1986); 42 U.S.C. § 405(g).

When resolving the issue of whether a claimant is disabled and therefore entitled to Disability

Insurance Benefits (DIB) or Supplemental Security Income (SSI) benefits, the Commissioner uses a

five-step sequential evaluation process. The U.S. Supreme Court recently summarized this five-step

process as follows:

If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 379-380, 157 L.Ed.2d 333, 339-340 (2003)

3

(footnotes omitted; brackets in original).

In his decision, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date of January 1, 2003. R. p. 22. At the second step of the sequential evaluation process, the ALJ identified the Plaintiff's impairments as chondromalacia of the left patella with a history of arthroscopic surgery of the left knee, a depressive disorder, an adjustment disorder, an anxiety disorder and an attention deficit hyperactivity disorder. R. pp. 22-23. Although these impairments were deemed to be "severe" for purposes of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), it was determined that they did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing of Impairments" or "listed impairment"). R. pp. 22-23. In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ made the following finding with respect to the Plaintiff's residual functional capacity:

> The claimant's impairments, in combination with his subjective complaints, preclude work requiring lifting or carrying more than 10 pounds frequently or 20 pounds occasionally, more than occasional balancing, stooping or climbing of ramps/stairs, any kneeling, crouching, crawling or climbing of ladders, ropes or scaffolds, more than occasional pushing or pulling with the left lower extremity, including the operation of pedals, more than simple, routine, repetitive job tasks, more than occasional interaction with supervisors, co-workers or the general public, or any exposure to the stress associated with fast-paced production environments, more than simple, work-related decisions or, in general, more than relatively few work place changes, but they do not prevent the claimant from performing a wide range of work at the light exertional level[.]

R. p. 23. Moving on to the fourth step, the ALJ concluded that the Plaintiff was unable to return to his past relevant work as a business machine technician, a floor salesperson, or a general banking clerk. *Id.* At the fifth step, the ALJ determined that the Plaintiff could work as a stock worker, a floor cleaner, a receiving clerk, or an inventory clerk at the light exertional level. R. p. 24. Mr. Bentivegna's

testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. § 423(d)(2)(A). R. pp. 252-255.

In support of his motion for summary judgment, the Plaintiff bases his primary argument on the weight given by the ALJ to the opinions expressed by his treating and examining physicians. Document No. 11 pp. 22-25. The law governing an ALJ's treatment of the opinion of a treating physician has been clearly established. If "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." 61 Fed. Reg. 34490, 34491. The ALJ must accord great weight to the reports of treating physicians, "especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). If the ALJ determines that a treating physician's opinion is outweighed by conflicting medical evidence, he may reject that opinion. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Whenever the ALJ's decision is not fully favorable to the claimant, the opinion of the ALJ "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

5

medical opinion and the reasons for that weight." 61 Fed. Reg. 34490, 34492.

The Plaintiff was evaluated by Dr. Edward Haberman on February 10, 2004. R. pp. 110-118. Dr. Haberman diagnosed the Plaintiff as suffering from major depressive disorder and an anxiety disorder. R. p. 115. He ruled out diagnoses of attention deficit disorder and an adjustment disorder. *Id.* He determined that the Plaintiff's Global Assessment of Functioning ("GAF") was 35, and that his highest GAF within the preceding year had been 40. *Id.* Nonetheless, Dr. Haberman opined that the Plaintiff could potentially attain a GAF of between 60 and 65. *Id.* He believed that the Plaintiff "would have difficulty relating to others as to supervision or receiving criticisms from others in the work setting." R. p. 116.

Dr. James Millward, the Plaintiff's treating psychiatrist, completed an assessment form entitled "Medical Assessment of Ability to do Work-Related Activities-Mental" on November 18, 2004. R. pp. 182-183. He concluded that the Plaintiff had a "fair" ability to relate to co-workers, deal with the public, use his judgment, interact with supervisors and deal with work stresses. R. p. 182. He further reported that the Plaintiff had a "poor" (or nonexistent) ability to follow work rules and function independently. *Id.* Dr. Millward went on to report that the Plaintiff had a "poor" (or nonexistent) ability to understand, remember an d carry out simple, complex and detailed, noncomplex job instructions. R. p. 183. Finally, Dr. Millward indicated that the Plaintiff had a "good" ability to maintain his personal appearance and a "fair" ability to behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability. *Id.* At that time, Dr. Millward believed that the Plaintiff was capable of managing his own benefits in an advantageous manner. *Id.*

On August 3, 2005, Dr. Millward completed a second assessment form expressing his opinion

6

as to whether the Plaintiff's mental impairments precluded him from engaging in work-related activities.[1] R. pp. 203-204. With respect to the Plaintiff's ability to make occupational adjustments, Dr. Millward opined that he had a "good" ability to interact with supervisors and relate to co-workers, a "fair" ability to follow work rules and deal with the public, and no ability to use his judgment, deal with work stresses, function independently or maintain attention and/or concentration. R. p. 203. In the personal adjustment section of the form, Dr. Millward reported that the Plaintiff had a "fair" ability to understand, remember and carry out simple job instructions and a "poor" (or nonexistent) ability to understand, remember and carry out complex or detailed, noncomplex job instructions. R. p. 204. Dr. Millward also noted that the Plaintiff had a "fair" ability to maintain his personal appearance, behave in an emotionally stable manner, and relate predictably in social situations, but that he had a "poor" (or nonexistent) ability to demonstrate reliability. *Id.* At the end of the form, Dr. Millward indicated that the Plaintiff was incapable of managing his own benefits, and that his wife managed his bills because of his lack of understanding as to what he was doing. *Id.*

The Plaintiff also relies on the report of Dr. Elizabeth Genovese, a nonexamining physician, in support of his disability claim. On March 15, 2004, she opined that the Plaintiff was temporarily disabled until a home health assessment was completed, his psychosocial stressors were minimized in a structured way by programs and services to alleviate some of the burden on his family's health

---

[1]This assessment form was completed subsequent to the hearing, but it was submitted before the ALJ's decision in this case. It was submitted as a part of Exhibit 15F, which is specifically referenced in the ALJ's decision. R. pp. 2, 21.

problems,[2] and his depression showed demonstrable improvement in set measurable goals for improved interpersonal interaction, his ability to make realistic plans for himself and his family, and his self-esteem. R. p. 129. Dr. Genovese believed that the Plaintiff, upon completion of these goals, could proceed to work at the light or medium exertional level. *Id.*

The Plaintiff argues that the ALJ was wrong to discount the opinions expressed by Dr. Haberman, Dr. Millward and Dr. Genovese, and that the Commissioner's decision must be reversed. Document No. 11 pp. 22-25. The Commissioner contends that the ALJ's residual functional capacity assessment is "supported by substantial evidence" within the meaning of 42 U.S.C. § 405(g). Document No. 15 pp. 7-10. After a careful review of the evidence contained in the record, the Court is convinced that the Commissioner's decision is supported by substantial evidence.

In reaching his conclusion that the Plaintiff was not statutorily disabled, the ALJ relied on the report of Dr. Shomendra Moitra, who examined the Plaintiff on January 13, 2004. R. pp. 14-19. Dr. Moitra reported as follows:

Mr. Gorzelsky, according to his history, should be able to work quite easily at medium work, lifting 50 pounds maximum with frequent lifting and carrying of objects weighting [sic] up to 25 pounds. In an eight-hour workday, he may stand and walk for 6-8 hours. He can sit for 5-8 hours, and drive 5-8 hours. He may use his hands for repetitive single grasping, pushing, pulling, and fine manipulation. He may use his feet for repetitious motion, such as operating foot controls. He may bend frequently, twist frequently, and squat occasionally with his left knee slightly extended. He should be able to climb brief steps, there is no limitation on reaching, and he may operate moving

---

[2]The record indicates that the Plaintiff is not the only member of his family with health problems, and Dr. Genovese apparently believed that much of the Plaintiff's stress was due to the health problems experienced by other members of his family. The ALJ specifically relied on the Plaintiff's ability to care for his family to support his determination that the Plaintiff was capable of substantial gainful activity. R. p. 17 ("Additionally, the claimant reported that he is able to care for his disabled wife and his 4 children, who have asthma and/or attention deficit hyperactivity disorder, and that he is able to perform various household chores independently.").

equipment.

\*\*\*

Based on my physical examination, Mr. Gorzelsky should be able to return to work. Other than the restrictions that he claims are due to poor memory, lack of focus, and the need to take care of his wife, there was nothing in my examination that would exclude him from the workforce.

Mr. Gorzelsky has decided to exit the workforce; this is described in the peer-review literature as the "Disability Syndrome," which describes an individual who is able to be employed in substantial gainful activity but elects not to.

R. pp. 108-109. In light of Dr. Moitra's clearly expressed opinion that the Plaintiff was not disabled, it cannot be said that the ALJ's decision was not based on competent medical evidence.

Dr. Moitra's examination report was not the only medical evidence relied upon by the ALJ. Dr. Philip Turco, who performed a consultative medical examination of the Plaintiff, concluded that the Plaintiff could frequently lift or carry up to ten pounds and occasionally lift or carry up to one hundred pounds.[3] R. pp. 155. Although Dr. Turco indicated that the Plaintiff was limited to only occasional bending, kneeling, stooping, crouching, balancing, or climbing, he found no standing, walking, sitting, pushing, pulling, or environmental limitations. R. pp. 155-156. In addition, Mary Benson, a physical therapist who examined the Plaintiff, stated on February 18, 2004, that work-related activities "should be tolerated well by him in the competitive employment market[,]" provided that the appropriate limitations and restrictions were observed. R. p. 120.

On July 13, 2004, a physical residual functional capacity assessment form was completed by a

---

[3]The assessment form appears to have been completed sometime in June, 2004, but the date is not fully legible. R. p. 156.

9

state agency medical consultant.[4] After reviewing the relevant documentation, the consultant concluded that the Plaintiff could occasionally lift or carry fifty pounds and frequently lift or carry twenty-five pounds. R. p. 158. The consultant also opined that the Plaintiff could stand, walk or sit for about six hours in an eight-hour workday, and that his pushing and pulling abilities were unlimited. *Id.* It was also noted that there were no postural, manipulative, visual, communicative or environmental limitations. R. pp. 159-161.

The Court acknowledges that the Plaintiff, in this Court, focuses his argument on his nonexertional impairments rather than on his exertional impairments. Document No. 11 pp. 22-25. Dr. Moitra specifically stated, however, that the Plaintiff's anxiety and depression would most likely not interfere with his ability to engage in substantial gainful activity. R. p. 108. Dr. Moitra also indicated that the Plaintiff's attention deficit hyperactivity disorder would have been controlled had he been compliant with his medication reg imen. *Id.* Nonetheless, with respect to each of these two observations, Dr. Moitra indicated that he would defer to the results of a psychological examination. *Id.* Dr. Moitra further stated that no additional diagnostic tests were recommended for the Plaintiff's anxiety and depression. *Id.*

The ALJ based his ultimate determination in this case on the Plaintiff's failure to comply with his medication regimen. R. p. 17. The applicable regulations state as follows:

**Need to follow prescribed treatment.**

(a) *What treatment you must follow.* In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work, or, if you are a child, if the treatment can reduce your functional limitations so that they are no

---

[4]The signature is illegible, and the record does not otherwise indicate the name of the consultant. R. pp. 2, 164.

10

longer marked and severe.

(b) *When you do not follow prescribed treatment.* If you do not follow the prescribed treatment without a good reason, we will not find you disabled or blind or, if you are already receiving benefits, we will stop paying you benefits.

(c) *Acceptable reasons for failure to follow prescribed treatment.* We will consider your physical, mental, educational, and linguistic limitations (including any lack of facility with the English language) when determining if you have an acceptable reason for failing to follow prescribed treatment. The following are examples of a good reason for not following treatment:

    (1) The specific treatment is contrary to the established teaching and tenets of your religion.

    (2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.

    (3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.

    (4) The treatment because of its enormity (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

    (5) The treatment involves amputation of an extremity, or a major part of an extremity.

20 C.F.R. §§ 404.1530, 416.930 (emphasis and boldface type in original; underlined type appears only

in § 416.930). Treatment notes from the Nulton Diagnostic & Treatment Center confirm that the

Plaintiff was not taking his medications on a consistent basis. R. pp. 188-200.

       The regulations make it clear that conditions which can be reasonably controlled by medication

or other forms of medical treatment are not considered to be statutorily disabling. *Macera v. Barnhart*,

305 F.Supp.2d 410, 421 (D.Del. 2004). Where a claimant has a good reason for not following a

recommended course of treatment, his or her credibility should not be undermined solely on account

of such refusal. *Foley v. Barnhart*, 432 F.Supp.2d 465, 481 (M.D.Pa. 2005). For instance, a claimant

who stops taking his or her medication because of side effects should not be faulted for doing so.

*Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003). Where the claimant suffers from a mental

11

impairment, noncompliance may *itself* be evidence of a disability. *Mendez v. Chater*, 943 F.Supp. 503, 508 (E.D.Pa. 1996). "[I]n determining whether a claimant with a mental impairment has reasonably refused treatment, the question is whether he has justifiably refused in light of his psychological, social or other individual circumstances." *Sharp v. Bowen*, 705 F.Supp. 1111, 1124 (W.D.Pa. 1989). "An individual with a severe mental impairment quite likely lacks the capacity to be reasonable." *Id.* at 1124 (internal quotation marks omitted). For this reason, such an individual "may not have the same capacity to assess the risks and benefits of prescribed treatment as someone who is not affected by such an impairment." *Id.* at 1124. The question of whether a claimant's refusal is justified, however, is subject to the "substantial evidence" standard when it is reviewed under 42 U.S.C. § 405(g). *Id.* at 1125. Like any other factual finding, a finding by the Commissioner that the Plaintiff had no justifiable excuse for deviating from his treatment regimen, "if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The treatment records from the Nulton Center indicate that the Plaintiff claimed to have forgotten to take his medications. R. pp. 188, 191, 197, 200. Nevertheless, there is also documentation indicating that he did not want to change his medications or dosages. R. pp. 189, 196, 198-199. Apparently, he was benefitting from his medications when he took them as prescribed. R. pp. 189, 196, 198, 200. In addition, Dr. Moitra believed that the Plaintiff's attention deficit hyperactivity disorder could be controlled with the very medication which the Plaintiff was supposed to be taking. R. p. 108. At this stage, the Court's function is not to weigh the evidence. So long as it is supported by substantial evidence, the Commissioner's decision cannot be set aside even if the Court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Where there is

12

conflicting evidence contained in the record, the ALJ may reasonably conclude that the evidence pointing in the direction of a disability determination is outweighed by the evidence pointing in the direction of a claimant who is capable of engaging in substantial gainful activity. *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985). Given the conflicting evidence in the instant case, the Court is convinced that the decision of the Commissioner must be affirmed. In so concluding, the Court notes that the Plaintiff makes no specific argument that his failure to take his prescribed medications was justified, or otherwise excusable. Instead, he makes a more generalized argument about the weight (or lack thereof) given to the opinions of his treating physicians. Document No. 11 pp. 22-25. Under the present circumstances, and considering the standard of review applicable under 42 U.S.C. § 405(g), this argument is unavailing. "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

The Court is aware of the vocational report dated May 18, 2004, which confirms that Dr. Donald Refice believed that the Plaintiff met the criteria for Listings 12.04 and 12.06, which deal with affective disorders and anxiety-related disorders. R. pp. 94-95. In addition, a review of the hearing transcript reveals that the Plaintiff's counsel believed that the Plaintiff met or medically equaled Listing 12.08 as well. Although the Plaintiff briefly refers to Dr. Refice's opinion in his brief, he makes no specific argument that the ALJ's determination at the third step of the sequential evaluation process was erroneous. Document No. 11 p. 19. Furthermore, the ALJ thoroughly evaluated the Plaintiff's impairments under the criteria for each of the relevant listed impairments, thereby fulfilling his legal duty to make a reasoned step-three determination. R. pp. 15-17; *Poulos v. Commissioner of Social Security*, 2007 U.S. App. LEXIS 1496, 2007 WL 163065 (3d Cir.); *Jones v. Barnhart*, 364 F.3d 501,

504-505 (3d Cir. 2004); *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-120 (3d Cir. 2000). In the absence of a more developed argument on the part of the Plaintiff, the Court's inquiry can go no further.

Having concluded that the ALJ's assessment of the Plaintiff's residual functional capacity is supported by substantial evidence, the Court must determine whether the Commissioner met her burden of proving, at the fifth step of the sequential evaluation process, that the Plaintiff was capable of performing other work existing in the national economy. A close examination of the hearing transcript reveals that the ALJ included all of the Plaintiff's credibly established limitations in his hypothetical question to Mr. Bentivegna. R. pp. 253-254. Mr. Bentivegna identified jobs existing in the national economy which were consistent with the Plaintiff's residual functional capacity. R. pp. 254-255. The ALJ relied on Mr. Bentivegna's testimony in making his determination at the fifth step of the process. R. p. 22. Since the ALJ's hypothetical question included all of the Plaintiff's credibly established limitations, the ALJ was entitled to rely on Mr. Bentivegna's testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 553-554 (3d Cir. 2005); *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). Consequently, the Commissioner met her burden at the fifth step of the process, and her decision is supported by substantial evidence.

Accordingly, the Court must deny the Motion for Summary Judgment filed by the Plaintiff (Document No. 10) and grant the Motion for Summary Judgment filed by the Commissioner (Document No. 14). An appropriate Order follows.

14

**AND NOW**, this 20th day of February, 2007, this matter coming before the Court on the parties' cross-motions for summary judgment, IT IS HEREBY ORDERED THAT: 1) the Plaintiff's Motion for Summary Judgment (Document No. 10) is DENIED; and 2) the Defendant's Motion for Summary Judgment (Document No. 14) is GRANTED.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

15